## STEVENS vs. WHEELER.

A vendor of goods cannot exercise the right of stoppage *in transitu* after the goods have been delivered by the carrier to a third person, on the order of the vendee; although they have never been delivered to the vendee at the place to which they were, at the time of the purchase, ordered by him to be sent. S. B. STRONG, P. J., dissented.

A vendor has the right to stop goods sold by him, where he discovers the vendee to be insolvent, at any time while the goods are *in transitu.*

The transitus continues until the goods reach the place of destination; unless sooner terminated by the act of the vendee.

A delivery of the goods, or a part of them, to the vendee, or a delivery to his agent or to a *bona fide* purchaser from him, terminates the right of the vendor of the goods to stop them.

The moment the goods come to the possession of the vendee, without fraud, the transitus is at an end.

APPEAL from a judgment rendered at a special term, after a trial at the circuit. The complaint alleged that the defendant wrongfully detained and converted to his own use certain property of the plaintiff, to wit, twelve cases, containing 658 pairs of shoes, of the value of $500. The answer was a general denial. The evidence showed that in August, 1855, at Haverhill, Mass. the plaintiff sold to Knower & Co. of Brooklyn, N. Y. twelve cases of shoes, on credit, and shipped the same by the Fall River Line, directed to the purchasers, at Brooklyn. The purchase was made by George S. Knower, for the firm of Knower & Co. of which he was a member. Knower & Co. being indebted to the defendant, Wheeler, upon a note for $500, not yet due, George S. Knower, previous to leaving home for the purpose of purchasing the shoes in question, gave Wheeler a verbal order to get goods from the store, to be applied in payment of the note. The defendant testified that Knower offered to pay him in goods, before the note became due, which would be on the 20th of August, 1855. He had not the goods the defendant wanted, but said he would procure them for him, and charge him only one cent a pair advance on the six months' price at which he should purchase them. The defendant gave him a written list of the kinds

that he wanted. On the day of his return from Haverhill, after having purchased the goods in question, G. S. Knower, at the request of the defendant, gave him another order, to get goods from the Fall River Line. This order was in writing, and was general in its terms. The "defendant had a right to take such goods, and such cases, as he pleased." Upon this order the defendant obtained the goods in question from the boat of the Fall River Line, on their arrival at New York. This was on the 22d or 23d of August. Some days afterwards he received a bill of them from Knower & Co. and settled for the price, in part by giving up and canceling Knower & Co.'s note, and partly with cash. On the day that G. S. Knower returned home, from Haverhill, but after the giving of the written order to Wheeler, Knower & Co. made a general assignment of their property, in trust for the benefit of creditors. The goods so bought of the plaintiff had never been paid for. The plaintiff insisted that inasmuch as the insolvency of the vendees occurred immediately after the purchase, and before the goods ever came into their possession, he was entitled to exercise the right of stoppage *in transitu;* and he demanded the goods of the defendant, who refused to deliver them up, claiming to hold them as a bona fide purchaser from Knower & Co. Previous to the demand, the defendant had sold a portion of the goods—about half a dozen cases by the case, and two or three cases by retail. The court charged the jury that the goods in question had been stopped by the vendor while in transit, and that the plaintiff was entitled to recover the value thereof. And the judge directed the jury to render a verdict for the plaintiff for the sum of $496.15; it being admitted that the goods mentioned in the bill of sale by Knower & Co. to the defendant were the goods sold by the plaintiff to Knower & Co.; and it being further admitted that the value of the goods sold by the defendant before demand made on account of the plaintiff, was the sum of $50. The defendant excepted to the charge. The jury found a verdict for the plaintiff, for

$496.15, and from the judgment entered thereon the defendant appealed.

*Hayner & Smith*, for the appellant.   I.  The court erred in not granting the defendant's motion for nonsuit.   If the goods in possession of the defendant were the same that were sold by the plaintiff to Knower & Co., the plaintiff cannot recover, because the transit had ended and the vendor's right of stoppage no longer existed.   The order given by Knower & Co. to the defendant was sufficient to transfer, and did transfer the title of the goods to the defendant.   The complaint alleges a conversion of the plaintiff's property, and under such a complaint the plaintiff cannot recover on the ground of stoppage *in transitu;* for that ground affirms the sale and shows the title to be out of the plaintiff, and he can only recover on the ground of having a lien or special property, and it should be so alleged in the complaint.   The order given by Knower & Co. to the defendant to receive the goods, was a power coupled with an interest, and could not be defeated by any subsequent act of Knower.  (2 *Kent,* 644.   *Chitty on Cont. p.* 213, *&c.* 1 *Parsons on Cont.* 58 *and note; Id. p.* 60 *and n.*   12 *John,* 346.   8 *Wheat.* 174.)

Even if the assignment revoked the order as *a power,* it did not revoke it as a *license,* which protects the defendant from a charge of trespass, he having no notice of any revocation.   The assignees took the goods subject to what the defendant might do before notice to him that his authority was revoked.   His taking the goods (if not for his own benefit) was for their benefit; it was their taking, effected by him as their agent, and put them under their direction.  (*See* 2 *Kent,* 543–5; *Mottram* v. *Heyer,* 5 *Denio,* 629, 30.)

*C. A. Nichols,* for the plaintiff.   I.  The transit was not ended at the time of the demand made by the plaintiff upon the defendant, the goods not having reached the place named by the vendee to the vendor as the place of their destination.

(2 *Kent,* 550, *and cases there referred to. Buckley* v. *Furniss,* 15 *Wend.* 137. *Coates* v. *Railton,* 6 *B. & C.* 422. *Edwards* v. *Brewer,* 2 *Mees. & Welsby,* 375.)

II. The defendant was not a *bona fide* assignee of the bills of lading, or purchaser of the goods, and acquired no property in them to defeat the vendor's lien. (2 *Kent,* 550, *&c. Cumming* v. *Brown,* 9 *East,* 506.)

III. There was nothing more than an executory contract for the sale of these goods until after the assignment of Knower, and the bill of sale made after the assignment of all his property could pass no title to the defendant. (2 *Kent,* 495, 6. *Hanson* v. *Meyer,* 6 *East,* 614. *Withers* v. *Lyss,* 4 *Camp,* 237. *Simmons* v. *Swift,* 5 *Barn. & C.* 857. *McDonald* v. *Hewett,* 15 *John.* 349.) The defendant had notice of such circumstances as prevented the transfer from operating to defeat the vendor's right of stoppage *in transitu.* (2 *Kent,* 550.)

INGRAHAM, J. The question in this case is whether a vendor of goods can exercise the right of stoppage *in transitu* after the goods have been delivered by the carrier to a third person, on the order of the vendee, although they had never been delivered to the vendee at the place directed by him at the time of the purchase.

For the purpose of this case it may be conceded that the plaintiffs had a right to stop the goods, *if* they were still *in transitu;* and then it would only remain to inquire whether these goods were still in that condition. I suppose it will not be denied that a delivery to the vendee's agent would be the same as a delivery to him. So long ago as *Lickbarrow* v. *Mason,* (2 *Term Rep.* 63,) it was held that a mere transfer of the bill of lading, by a vendee, to third persons, for value, before the arrival of the goods, terminated the right of stoppage *in transitu,* and vested the title in the assignee, although the vendee had become insolvent before the delivery. In *Gurney* v. *Behrend,* (25 *Law and Equity Rep.*      ,) Lord Campbell says: "Ever since the great case of *Lickbarrow* v. *Mason,* the law

has been considered to be that the bona fide transferee for value, of a bill of lading indorsed by the shipper or his consignee, has an absolute title to the goods, freed from the equitable right of the *unpaid* vendor to stop *in transitu* from the purchaser, and we believe it to be of essential importance to commerce that this law should be upheld." So in *Key* v. *Cotesworth*, (14 *Law and Eq. Rep.* 435,) it was insisted in a similar case, that the right of stoppage *in transitu* subsisted, in consequence of the insolvency of the purchaser, but the court held that the vendors could not recover after a sale by the vendee. (*See also Wilmshurst* v. *Bowker*, 7 *Man. & G.* 882.) So also it has been held that goods deposited in a warehouse at the end of the journey were free from the right of stoppage, and that the transitus was at an end. (*Dodson* v. *Wentworth*, 4 *Man. & G.* 1080. 5 *Scott N. R.* 821.) In *Godts* v. *Rose*, (33 *Law and Eq. Rep.* 268,) similar questions to those in this case were involved, and although in that case the vendors recovered, on the ground that there had been no delivery, Williams J. says, "No doubt if the order had been handed to the defendant and he had taken it to the wharfinger, and it had been agreed between them that the latter should hold the oil for the defendant, as his agent, there would have been a complete transfer and delivery."

In *Plymouth Bank* v. *Bank of Norfolk*, (10 *Pick.* 454,) it was held that an order for delivery, upon the depositary, whether he obeys it or not, or sets up a title to hold for himself, divests the property of the vendor. And where the vendee, even before the arrival of the goods at the place of their ulterior destination, does any act equivalent to taking possession, the transitus is at an end. (*Forster* v. *Frampton*, 6 *B. & C.* 107. *Jordan* v. *James*, 5 *Ham.* 102.)

The order in this case was for only a part of the goods, and to be selected by the defendant. If such order had not been completed by the selection and delivery, there might be room for doubting whether such an order was sufficient to terminate the transitus. But I think there can be no doubt, where the

order has not only been delivered to the carrier but the goods have actually been received by the person to whom the order was given, and removed by him. The rule is clearly stated to be if the goods be once delivered to a servant or agent of the vendee authorized to receive them by him, the right of the vendor to stop them, in the event of the insolvency of the vendee, is gone. (*Bolin* v. *Ruffnagle,* 1 *Rawle,* 9.)

It would be sufficient for the decision of this case merely to treat the defendant as the agent of the vendee in receiving the goods; and in such case the delivery to him of the goods would terminate the creditor's right over the goods. And a delivery to the vendee, of only a part of the goods sold, is a delivery of the whole, so far as to bar the right of stopping them on their passage. (2 *H. Black.* 504. 6 *East,* 614.)

If this be the law as to the vendee, or his agent, with how much more force can it be applied to a case of a purchaser from such vendee, who has received the goods and paid therefor. A bona fide purchaser of goods from a vendee, even where the delivery to him by the vendor was conditional, will acquire a valid title on receiving the delivery. (*Covill* v. *Hill,* 4 *Denio,* 323. *Smith* v. *Lynes,* 1 *Seld.* 41.) If this be the rule where the delivery was originally conditional, surely it cannot confer a less title where the vendor's claim is merely to stop the goods *in transitu.* The same principle is sanctioned in *Buckley* v. *Furniss,* (15 *Wend.* 137,) although that case is cited to show that the vendor may exercise the right before the goods come to the possession of the vendee.

From all these cases, and I can find none sanctioning a contrary doctrine, the following rules are deducible, viz : That the vendor has a right to stop goods sold by him, where he discovers the vendee to be insolvent, at any time while the goods are *in transitu.* That the transitus continues until the goods reach the place of destination, unless sooner terminated by the act of the vendee. That a delivery to the vendee, of the goods, or a part of them, or a delivery to his agent or to

a bona fide purchaser from him, terminates the right of the vendor of the goods to stop them.

I have not referred to the fact of an assignment having been made, the same day, by the vendee, for the benefit of his creditors. I can see in that nothing to alter the rights of the defendant. The purchase by him, followed by possession, would protect his purchase if the fact of any other sale or transfer having been made without delivery had not come to his knowledge. Several of the cases I have referred to sustain this principle. Whether the defendant be considered as the agent of the vendee, or as a bona fide purchaser without notice, or the agent of the assignee would be immaterial in making out the one material fact, viz: that the goods had in some way come to the possession of the vendee without fraud. The moment that is established, the transitus is at an end.

The instruction to the jury, in this case, that "the goods had been stopped by the vendor while in transit, and that the plaintiff was entitled to recover," was, I think, erroneous, and a new trial should be granted. Costs to abide the event.

LOTT, J., concurred.

STRONG, P. J., dissented.

New trial granted.

[DUTCHESS GENERAL TERM, May 11, 1858. *S. B. Strong, Lott* and *Ingraham,* Justices.]